# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-24592-PCH
1:21-cr-20553-PCH-1

KEVIN DUANE BYRON,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER DENYING MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

**THIS MATTER** is before the Court upon Movant Kevin Duane Byron's ("Movant") Motion to Vacate pursuant to 28 U.S.C. § 2255 ("Motion") [ECF No. 1], which was filed on November 20, 2024. The Government filed its Response in Opposition to the Motion on January 14, 2025 [ECF No. 6].

Construing the Motion liberally, consistent with *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), Movant raises the following claims:

- Claim 1: Ineffective assistance of counsel for failing to disclose and present the Government's plea offer, which Movant would have accepted. [ECF No. 1-1 at 3–5].

- Claim 2: Ineffective assistance of trial and appellate counsel for failing to challenge the introduction of photographs extracted from his cellphone. [ECF No. 1-1 at 5–7].

- Claim 3: Movant sentence is unconstitutional because a jury was required to decide if Movant's predicate offenses occurred on separate occasions under *Erlinger v. United States*, 602 U.S. 821 (2024). [ECF No. 1-1 at 7–8].

The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is **DENIED** on the merits.

# I.    BACKGROUND

The following facts are derived from Eleventh Circuit's opinion on direct appeal in *United States v. Byron*, 2023 WL 8627839 (11th Cir. Dec. 13, 2023).

> On June 30, 2021, while on patrol with other officers, police detective Alejandro Gomez observed a blue Lincoln with heavily tinted windows.  [Movant], a convicted felon, was the sole occupant and driving.
>
> Believing the window tinting to be illegal, the officers activated their patrol car's lights and sirens to conduct a traffic stop.  [Movant] travelled four blocks and made a left turn before stopping.  Once [Movant] finally stopped, Detective Gomez approached and asked [Movant] to roll down the windows for safety purposes.  [Movant] rolled down only the driver's side window.  As [Movant] did so, Detective Gomez observed [Movant] lean forward "in a manner kind of reaching toward the floorboard of the driver's side of the vehicle."  Detective Gomez had [Movant] roll down all the windows and place his hands on the steering wheel.
>
> Detective Gomez immediately smelled a strong odor of marijuana emitting from the Lincoln.  After obtaining [Movant]'s driver's license, which [Movant] said was suspended, Detective Gomez asked [Movant] to exit the Lincoln and placed him in handcuffs.
>
> Once [Movant] was outside the Lincoln, Detective Gomez noticed in plain view an empty gun holster underneath the center console.  Detective Gomez also saw a box of Popeyes chicken stuffed underneath the driver's seat, with chicken inside it.  Detective Gomez found this "very unusual," noting that he had never seen a box of fast food stuffed under a driver's seat in that manner.  There also was a Popeyes drink cup on the center console with condensation on it, indicating it was a fresh drink.
>
> Once the box of chicken caught his attention, Detective Gomez, from outside the car, angled himself and saw an extended magazine protruding from underneath the box.  Detective Gomez angled himself a little more and saw that the magazine was attached to a firearm.  The firearm was a Glock 19 semiautomatic pistol loaded with 29 live rounds of ammunition.  A subsequent search of the Lincoln revealed [Movant]'s cell phone and, on the passenger's side, a backpack containing a "large amount of marijuana," packages of THC edibles, and digital scales.
>
> The firearm in the Lincoln was later determined to be stolen.  No latent fingerprints were recovered from the firearm, the ammunition, or the extended magazine.  A crime scene investigator explained that it was very rare to do so because of the texture of firearms and ammunition and the way they are used and cleaned.  While detectives learned [Movant]'s mother owned the Lincoln, subsequent surveillance indicated [Movant] drove the car as if it was his own.

> Detective Onassis Perdomo obtained a search warrant for [Movant]'s cell phone. Detective Perdomo found on the cell phone: (1) text messages; (2) pictures of two firearms [Movant] sent to multiple individuals in 2019, offering to sell the firearms; (3) a picture of [Movant] sitting in a car with a Glock handgun in his lap; (4) a picture of a Glock handgun with an extended magazine next to a bag of marijuana; and (5) a picture of a Glock handgun with an extended magazine and a rifle.
>
> A crime gun investigator examined these latter three pictures and determined: (1) the firearms displayed were authentic, rather than toys or replicas; and (2) the Glock 19 displayed was the same firearm recovered from the Lincoln during the June 30 traffic stop.  The crime gun investigator based his latter opinion on a partial serial number and other markings and wear and tear visible in the pictures.

*Id*. at *1–2.  Movant presented a defense which included calling his mother to testify to the following facts.  *Id*. at *3.

> Joyce Byron, [Movant]'s mother, testified that she co-owned the Lincoln with [Movant]'s girlfriend, who usually drove the car.  A few weeks before [Movant]'s arrest, Ms. Byron found the firearm in a closet in her deceased son's room and assumed the firearm belonged to him.  Without telling [Movant] or his girlfriend, Ms. Byron put the firearm under the Lincoln's driver's seat, intending to get rid of it, and then forgot about it.
>
> On cross-examination, Ms. Byron admitted that she was "just speculating" when she stated under oath in her prior affidavit[1] that the firearm belonged to her deceased son and that she did not know to whom the firearm belonged.  She did not remember finding a holster with the firearm and could not explain how the holster got into the Lincoln.

*Id*.

On November 9, 2021, a federal grand jury in the Southern District of Florida returned an indictment charging Movant with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  [CR ECF No. 3].

Before trial, the Government filed a notice of intent to introduce the following evidence under Federal Rule of Evidence 404(b): (1) text messages and pictures from Movant's cellphone

---

[1] Movant's mother submitted this affidavit in support of Movant's request for pre-trial release.  *See* [ECF No. 16 at 9].

related to his selling firearms; and (2) certified conviction records from three separate cases where Movant pled guilty to felony offenses involving the possession of firearms in state court. Specifically, a 2012 conviction for two counts of aggravated assault with a firearm in *State v. Byron*, No. F11-015528 (Fla. Cir. Ct. 2011); a 2005 conviction for one count of armed robbery with a firearm or deadly weapon in *State v. Byron*, No. F04-031783B (Fla. Cir. Ct. 2004); and a 2005 conviction for one count of armed robbery with a firearm or deadly weapon and one count of armed burglary in *State v. Byron*, No. F03-031591 (Fla. Cir. Ct. 2003). [CR ECF No. 25]. The Government also moved *in limine* to admit the photographs that were forensically extracted from the cell phone with the search warrant. [CR ECF No. 27].

Movant, through counsel, filed a motion to suppress the evidence from the cell phone, arguing that law enforcement improperly accessed the contents of his cell phone at the scene of his arrest. [CR ECF No. 28].

Following an evidentiary hearing, the Court ruled that the law enforcement officer's testimony was more credible than Movant's testimony. [CR ECF No. 68 at 64]. In light of the Court's denial of the suppression motion, defense counsel conceded that the cellphone pictures were admissible under Rule 404(b). *Id*. at 66–68. The Court entered an order denying the defense motion to suppress evidence and granting the Government's motion *in limine* to admit the cellphone evidence. [CR ECF No. 34, 36].

Movant proceeded to trial where the parties stipulated (1) that Movant was a convicted felon and prohibited from having a firearm; (2) that on June 30, 2021, Movant knew he had previously been convicted of a Florida felony offense; and (3) that Movant was convicted of three prior firearms-related felonies. [CR ECF No. 69 at 58, 192–97; CR ECF No. 47-1]. After a two-

day trial, the jury found Movant guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  [CR ECF No. 40, 41, 42, 43].

Prior to sentencing, a Pre-Sentence Investigation Report ("PSI") was issued.  The base offense was set at 26 under United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(1) because the Movant committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.  PSI ¶ 12.  The PSI relied on Movant's state court convictions in Case Nos. F11-015528, F04-031783B, and F03-031591.  *Id.*  Because the offense involved a stolen firearm, the offense level was increased by two points under § 2K2.1(b)(4)(A).  *Id*. ¶ 13.  Because the Movant possessed a firearm in connection with another felony offense, the offense level was increased by four points under § 2K2.1(b)(6)(B).  *Id*. ¶ 14.  The PSI determined that Movant was an armed career criminal and, therefore, subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e), pursuant to § 4B1.4(a).  *Id*. ¶ 19.  Because Movant possessed a firearm in connection with a controlled substance offense, as defined in § 4B1.2(b); the offense level was set at 34 pursuant to § 4B1.2(b)(3)(A).  *Id.*

Because Movant did not receive a decrease for accepting responsibility, the total offense level was set at 34.  *Id*. ¶ 21.  The PSI also concluded that Movant had 13 criminal history points and a criminal history category of VI.  *Id.* ¶ 30.  Movant's criminal history category of VI was also required because Movant was an armed career criminal.  *Id.*

The statutory term of imprisonment was fifteen years to life under 18 U.S.C. § 924(e)(1).  *Id*. ¶ 64.  Based on a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range was 262 to 327 months in prison.  *Id*. ¶ 65.

On June 13, 2022, the Court sentenced Movant to 240 months' imprisonment which constituted a twenty-two-month downward variance.  [CR ECF No. 60].

On June 17, 2022, Movant, through counsel, filed a notice of appeal.  [CR-ECF No. 61].

Movant argued that the District Court erred (1) by admitting evidence of texts and pictures of

firearms found on his cell phone; (2) by denying Movant's motion for a judgment of acquittal; (3)

by allowing the government to refer to Movant as a drug dealer; and (4) by demonstrating bias

against Movant.  *Byron*, 2023 WL 8627839 at 1.  The Eleventh Circuit rejected all four arguments

and affirmed Movant's convictions and sentences.  *Id*. at *5–11.

On November 20, 2024, Movant filed the instant Motion to Vacate, Set Aside, or Correct

Sentence under § 2255.  [ECF No. 1].

## II.    LEGAL STANDARD

Because collateral review is not a substitute for direct appeal, the grounds for collateral

attack on a final judgment pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief

under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United

States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d

1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and

for that narrow compass of other injury that could not have been raised in direct appeal and would,

if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225,

1232 (11th Cir. 2004) (per curiam) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th

Cir. 1988) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982) (collecting cases)); *Massaro

v. United States*, 538 U.S. 500, 504 (2003).  If a court finds a claim under § 2255 valid, the court

shall vacate and set aside the judgment, and discharge the prisoner, grant a new trial, or correct the

sentence.  *See* § 2255.  The burden of proof is on Movant, not the Government, to establish that

vacatur of the conviction or sentence is required.  *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017), *reh'g en banc denied*, *Beeman v. United States*, 899 F.3d 1218 (11th Cir. 2018), *cert. denied*, *Beeman v. United States*, 139 S. Ct. 1168 (2019).

Under Claims 1 and 2, Movant alleges that counsel was ineffective.  *See* [ECF No. 1-1].  The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  To show ineffective assistance of counsel, a movant must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the movant.  *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

Regarding the first prong of the *Strickland* test, the movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  Since this evaluation is inherently difficult, the court must strongly presume that counsel's conduct follows the reasonable professional norms, and the movant must overcome this presumption.  *Id.*  "To overcome that presumption, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'"  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)).  The analysis focuses on whether "some reasonable lawyer" could have acted in the circumstances as the defense counsel acted, not what "most good lawyers" would have done.  *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (citation omitted).  "In fact, even if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen."  *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Burt v. Titlow*, 571 U.S. 12, 23–24 (2013)

(alteration incorporated)).  "[C]onstitutionally acceptable performance is not narrowly defined, but instead encompasses a 'wide range.'"  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).

Regarding the second prong of the *Strickland* test, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  To show prejudice, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

If the movant fails to demonstrate one of the two *Strickland* prongs, the Court need not address the other.  *See id.* at 697.  "The object of an ineffectiveness claim is not to grade counsel's performance."  *Id.*  "If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed."  *Id.*  Even a professionally unreasonable error by counsel does not warrant that a judgment in a criminal proceeding be set aside "if the error had no effect on the judgment."  *Id.* at 691.

Last, the Eleventh Circuit recognizes that, given the foregoing principles and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters*, 46 F.3d at 1511 (citation omitted).

## IV.    MERITS

Under **Claim 1**, Movant alleges ineffective assistance of counsel for failing to disclose and present the government's plea offer, which Movant would have accepted.  [ECF No. 1-1 at 4–7].  According to Movant, the Government sent defense counsel, Theodore G. Mastos ("Mastos"), an email in December of 2021 which offered to make a sentence recommendation of 188 to 235 months, at the low end of the guidelines range.  [ECF No. 1-1 at 12–13].  The email estimated that

Movant was facing 262 to 367 months in prison if convicted at trial.  *Id*. at 12.  Movant alleges that he first learned of this offer when he received his trial defense files while preparing for his direct appeal.  *Id*.  He claims that had defense counsel informed him of the email's contents, he would have accepted the Government's offer.  *Id*.  Movant signed his Motion to Vacate under the penalty of perjury.  *See id*. at 12.  The Government attached an affidavit executed by Movant's counsel to its Response which states, "I fully apprised [Movant] of the government's plea offer of 188 to 235 months' imprisonment.  Movant rejected the plea offer and insisted on going to trial." [ECF No. 6-1].

The Supreme Court has long recognized that *Strickland*'s two-part inquiry applies to ineffective assistance of counsel claims related to the plea process.  *See Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  The right extends "to the negotiation and consideration of plea offers that lapse or are rejected." *Id*. (citations omitted).  A defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to a client.  *See Missouri v. Frye*, 566 U.S. 134, 145 (2012).  A lawyer's failure to convey a plea agreement constitutes deficient performance under *Strickland*.  *Id*. at 145, 147.

Here, accepting Movant's allegations as true,[2] Movant has sufficiently established that his counsel never conveyed the plea offer to him.  *See generally* Motion.  The failure of Movant's counsel to convey this plea constitutes deficient performance.  *See Strickland*, 466 U.S. at 688, (stating that defense counsel has a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution").

---

[2] The Court is required to accept Movant's allegations as true.  *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir.1991).  Defense counsel's affidavit is insufficient to undermine Movant's claim that counsel failed to convey the plea offer.  *See id*.

Although the record supports a finding that counsel provided a deficient performance, Movant has failed to establish prejudice as required by *Strickland*.

As to prejudice, Movant must demonstrate a reasonable probability that "(1) the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of the intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Osley*, 751 F.3d at 1222 (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).  In other words, some "objective evidence of a movant's pre-conviction willingness to plead guilty" is required to support such a claim. *Etheridge v. United States*, No. 04-CV-21090, 2011 WL 817915, at *6 (S.D. Fla. Mar. 2, 2011).

Here, there is evidence of the second and third elements, namely, that the Court would have accepted the terms of the plea offer and that the sentence under the offer, which included a maximum of 235 months, was lower than the 240-month sentence ultimately imposed.  *See* generally [CR ECF Nos. 60, 74].  As a result, the Court's decision turns on whether Movant has shown that he would have accepted the plea offer.  *See Osley*, 751 F. 3d. at 1222.

A prisoner cannot establish prejudice simply by saying that he would have pleaded guilty. *See Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").  Instead, the movant must point to "contemporaneous evidence to substantiate a defendant's expressed preferences." *Id*.  When conducting this evaluation, a "defendant's repeated assertions of innocence are a relevant consideration in determining whether he would have accepted a plea." *Osley*, 751 F.3d at 1224.

The instant record supports a conclusion that Movant would *not* have accepted the plea offer. First, he insisted on going to trial and maintained his innocence throughout trial, on appeal, and in his Motion to Vacate. Movant spent months going through the discovery and preparing for trial, as is evidenced by defense counsel's numerous motions for a continuance. [CR-ECF Nos. 14, 17, 19, 21]. Movant defended the charges with evidence that he was driving his mother's car and was unaware of the firearm. *See Byron*, 2023 WL 8627839 at *3. Movant filed a pre-trial motion to suppress the firearm and his cell phone records. [CR-ECF No. 28]. He challenged his pretrial detention by submitting an affidavit executed by his mother wherein she took responsibility for the firearm's being in the car. [CR-ECF No. 16 at 9]. According to his mother, the firearm belonged to Movant's deceased brother. *Byron*, 2023 WL 8627839 at *3. She left the firearm in the car and forgot it was there. *Id.* Movant also compelled his mother to provide false testimony at trial, *see id.*, which resulted in the Court's speculating at sentencing whether an obstruction-of-justice enhancement was warranted. [CR-ECF No. 74 at 22]. Specifically, the Court stated that it was one of the "most egregious" examples of "obstruction of justice [] when a son asks his mother to take the stand not once but also in an affidavit when it was shown beyond any objective fact, that firearm was never the young [deceased] son's firearm." *Id*.

Movant continued to maintain his innocence at sentencing where, when asked by the Court if Movant wanted to make a statement, Movant failed to take responsibility and instead contested the verdict and argued that the Government had "violated the Rules of Evidence." [CR-ECF No. 74 at 33–35].

Movant also maintained his innocence by challenging his conviction on direct appeal, wherein he argued that this Court committed numerous errors including demonstrating judicial bias against him, allowing prosecutorial misconduct, erroneously denying his judgment of

11

acquittal motion, and improperly admitting the cell phone evidence.  *See generally Byron*, 2023 WL 8627839.  In the instant motion, Movant adamantly maintains that he is innocent by continuing to challenge the sufficiency of the evidence, the Court's evidentiary rulings, and his trial stipulations.  *See generally* [ECF No. 1, ECF No. 1-1].

Movant fails to point to any contemporaneous evidence that he would have accepted the plea offer and would have proffered to the factual basis of his offense during a plea colloquy.  *See Lee*, 582 U.S. at 369 (holding that the movant must point to "contemporaneous evidence to substantiate a defendant's expressed preferences.").  Furthermore, the Court's conclusion that Movant would not have accepted the plea offer is supported by Movant's "repeated assertions of innocence," *see Osley*, 751 F.3d at 1224; prior to trial, at trial, on appeal, and in the instant proceedings.  *See, e.g.*, *Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (holding that a habeas petitioner's persistent refusal to accept responsibility during trial and at sentencing "patently contradict[ed] [his] assertion on appeal that he would have accepted a guilty plea and not insisted on going to trial but for his trial counsel['s] alleged error"); *Oliver v. United States*, 292 F. App'x 886, 887 (11th Cir. 2008) (citation omitted) (defendant who maintained his innocence throughout trial and sentencing "undermine[d] his claim that he would have consented to a plea agreement"); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (defendant did not establish prejudice under *Strickland* when he "cites no evidence to indicate that prior to his conviction he expressed any desire to plead guilty"); *Scott v. United States*, 325 F. App'x 822, 824–25 (11th Cir. 2009) (same).  In light of the foregoing, Movant cannot establish prejudice and is, therefore, not entitled to relief under Claim 1.

Under **Claim 2**, Movant alleges ineffective assistance of trial and appellate counsel for failing to challenge the introduction of photographs extracted from his cellphone based on a "date

theory." [ECF No. 1-1 at 5–6]. Specifically, Movant alleges that the Government had the burden of proving that the photos were taken "on or about June 30, 2021," which was the date of his arrest. *Id*. Because some photos were taken in 2019, the photos were not relevant. *Id*.

On direct appeal, the Eleventh Circuit noted that although Movant "did not object to the admission of the texts and pictures extracted from his cellphone in the district court, . . . there is no error here, much less plain error." *Byron*, 2023 WL 8627839 at *5. The Eleventh Circuit applied Rule 404(b) which allows evidence of other "crimes, wrongs, or acts" where the evidence is introduced to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. (citing Rule 404(b)(1), (2)). Pursuant to Rule 404(b), the evidence at issue is admissible if "(1) the evidence is relevant to an issue other than the defendant's character; (2) sufficient evidence is presented to allow a jury to find that the defendant committed the extrinsic act; and (3) the probative value of the evidence substantially outweighs its undue prejudice." *Id*. (citing *United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013)). The Eleventh Circuit applied this three-pronged analysis to determine whether the evidence extracted from Movant's cell phone was admissible.

> Here, as to the first prong of the Rule 404(b) test for admissibility, the texts and photographs of [Movant] possessing firearms in the past, including the same or a similar Glock 19 with an extended magazine, are relevant to whether he knowingly possessed the Glock 19 with the extended magazine found under the driver's seat on June 30, 2021. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005).

> As to the second prong, the record supports a finding by a preponderance of the evidence that [Movant] possessed the firearms in the photographs because the accompanying text messages indicated [Movant] was attempting to sell the firearms to another person. *See United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000) ("The prosecution can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur.").

> As for the third prong, the prejudicial effect of the photographs did not substantially outweigh their probative value. [Movant]'s *mens rea* was the primary issue at trial. Thus, evidence of his prior knowing possession of similar firearms was highly probative of his knowing possession of the firearm found under his driver's seat on June 30, 2021. *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).

*Id*. at *5–6.

The purpose of the Government's request to introduce the photos was to show that Movant was in possession of firearms on a date *prior to* his arrest. Thus, Movant's "date theory" argument would have been irrelevant and meritless. Trial counsel's failure to raise this "date theory" argument in counsel's motion to suppress the cell phone evidence, see [CR-ECF No. 28], does not constitute ineffective assistance. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that counsel is not ineffective for failing to raise non-meritorious issues). Movant's appellate counsel also challenged the introduction of the photos on appeal and counsel's alleged failure to present the meritless "date theory" argument in connection to this claim on appeal does not constitute deficient performance or prejudice under *Strickland*. *See Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1297 (11th Cir. 2017) (holding that an appellate counsel is not ineffective for "failing to perform a futile act, one that would not have gotten his client any relief."). In light of the foregoing, Movant is not entitled to relief under Claim 2.

Under **Claim 3**, Movant argues that his sentence is unconstitutional because a jury was required to decide if Movant's predicate offenses occurred on separate occasions under *Erlinger v. United States*, 602 U.S. 821 (2024). [ECF No. 1-1 at 7–8].

The Supreme Court has not made *Erlinger* retroactively applicable to cases on collateral review. *See Erlinger*, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) (noting the "*Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings." (citing *Edwards*, 593 U.S. at 258; other citation omitted)); *see also Massengill v. United States*, No. 23-

cv-01037, 2024 WL 3975885, at *9 n.2 (W.D. Tenn. Aug. 28, 2024) (stating that "[n]othing in *Erlinger* suggested that its ruling applied retroactively to cases on collateral review" (alteration added)); *McAdams v. United States*, No. 23-cv-04081, 2024 WL 4100368, at *4 (D. N.J. Sept. 6, 2024) (recognizing the Supreme Court did not "make its holding [in *Erlinger*] retroactively applicable to cases on collateral review" (alteration added)). *See also Yerkes v. United States*, No. 1:24-CV-228, 2024 WL 3460108, at *2 n.1 (E.D. Tenn. July 17, 2024) (noting that the Supreme Court in E*rlinger* "did not hold that its ruling was retroactive on collateral review."); *Stackhouse v. United States*, No. 8:15-CR-177, 2024 WL 5047342, at *8 (M.D. Fla. Dec. 9, 2024) (same).

Here, the Eleventh Circuit issued its mandate in Movant's direct appeal on January 11, 2024. *See* [ECF No. 79]. Movant did not seek review in the Supreme Court. The Supreme Court subsequently issued its opinion in *Erlinger* on June 21, 2024. *See Erlinger*, 602 U.S. at 840. Because *Erlinger* does not apply retroactively, Movant is not entitled to relief under Claim 3.

## V.    CERTIFICATE OF APPEALABILITY

A certificate of appealability shall issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(2). To make such a showing, an applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Movant has not made a substantial showing of the denial of a constitutional right. Nor has Movant raised issues that reasonable jurists would find debatable. A certificate of appealability is not appropriate in this case.

## VI.   CONCLUSION

Movant has failed to set forth an entitlement to *habeas* relief.[3]  It is therefore, **ORDERED AND ADJUDGED** that (1) Movant Kevin Duane Byron's Motion to Vacate pursuant to 28 U.S.C. § 2255 [ECF No. 1] is **DENIED**; (2) No certificate of appealability shall issue; (3) the Clerk of Court is directed to **CLOSE** this case; and (4) any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Miami, Florida on March 12, 2025.

_____
Paul C. Huck
United States District Judge

cc:   **Kevin Duane Byron**
       02564-506
       Coleman Medium
       Federal Correctional Institution
       Inmate Mail/Parcels
       Post Office Box 1032
       Coleman, FL 33521
       PRO SE

       **Francesse Lucius Cheron**
       DOJ-USAO
       99 NE 4th Street
       Miami, FL 33132
       786-761-3144
       Email: Francesse.lucius@usdoj.gov

---

[3] No evidentiary hearing is warranted because "the files and records of the case conclusively show that the [Movant] is entitled to no relief."  28 U.S.C. § 2255(b); *see also Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (finding that a hearing is not warranted in a § 2255 case where claims are "patently frivolous," "based upon unsupported generalizations," and/or "affirmatively contradicted by the record") (citation and internal quotation marks omitted).